# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                    Case No. 05-CR-145

RASHID ABDULLAH SALAHUDDIN,

    Defendant.

_____

# ORDER

    Defendant Rashid Abdullah Salahuddin ("Salahuddin") faces an upcoming jury trial, scheduled to begin on May 18, 2009, in connection with an indictment alleging a single count of being a felon in possession of two firearms. This fact standing alone is unremarkable. However, the defendant's case becomes more than noteworthy when considering that, although he was not indicted until June 2005, seizure of the firearms in question as well as the defendant's arrest actually occurred in January 2003. Yet, after more than six years, his case remains on-going with litigation continuing unabated. The details associated with the regrettable procedural history of this case are more fully set forth in this court's January 8, 2009 order suppressing Salahuddin's pre-*Miranda* statements to police, granting a new trial, and denying recusal. *See United States v. Salahuddin*, 2009 WL 62991, at *1-5 (E.D. Wis. Jan. 8, 2009).

Commensurate with the January 8, 2009 order, the court issued a further order scheduling Salahuddin's case for a jury trial that was to have commenced on March 2, 2009, and a final pretrial conference that was to have been conducted on February 24, 2009. In the interim, the government filed a further motion suggesting that the court reconsider denial of the recusal motion under 28 U.S.C. § 455(a) and, at the same time, requested that the court vacate its decision on the merits of Salahuddin's motions to suppress. The court in turn issued an order requesting that Salahuddin's counsel file a response to the motion on or before February 3, 2009. Counsel for Salahuddin then sought and was granted an extension of time to February 20, 2009, to confer with her client and file a response. As a result, the February 24, 2009 final pretrial conference was converted to a status conference during which the trial and final pretrial conference were rescheduled.

## BACKGROUND

Once again, the focal point for the government's renewed request for recusal is a meeting held in this court's chambers on October 9, 2008, between the court, the Federal Defender and the United States Attorney. As recounted in the January 8, 2009 order, the court informed the heads of both offices, neither of whom had any direct involvement in the case, that it had completed its *de novo* review of the magistrate judge's recommendations and was prepared to issue a decision in connection with Salahuddin's motions to suppress physical evidence and statements. The court also noted, without providing further analysis or insight into its decision, that neither party would be happy with the result because it would lead

to further litigation. The court went on to outline the complicated procedural history of the case and expressed its concerns over the significant commitment of time and taxpayer resources already expended with no apparent end in sight. As a result, the court invited counsel to explore alternatives to continued litigation, including potential resolution of the case under a different charging statute. The court then left the matter to the parties, noting that they were free to disagree and proceed in whatever manner they deemed appropriate.

Shortly thereafter, the government filed a one-page motion for recusal "in light of the Court's comments regarding its preferred disposition, and so that the parties may give due consideration to the Court's suggestions..." (Docket #105, p.1). Ultimately, the court issued its previously-completed decision on the magistrate judge's recommendations and denied the government's recusal motion as an attempt to circumvent a court decision it did not like by having the case reassigned to a fourth judge.

The government next filed the instant motion for reconsideration. However, before addressing the motion, the court invited a response from the defendant to allow a "full discourse on the issue." (Docket #110, p. 2). The defendant filed his response, which included a waiver of recusal under 28 U.S.C. § 455(e). This response effectively waived any § 455(a) grounds for recusal based upon an appearance of partiality. The government's motion for reconsideration is now before the court for decision.

-3-

## ANALYSIS

The government urges that this court reconsider its denial of the government's motion to recuse under § 455(a) and vacate the January 8, 2009 order on the merits of Salahuddin's motions to suppress. Specifically, the government now takes a different approach in support of its position by arguing that the court's in-chambers meeting with counsel violated Federal Rule of Criminal Procedure 11(c)(1) forbidding court participation in plea negotiations. The government further argues that the in-chambers meeting and the court's denial of the government's recusal motion create an appearance of partiality that requires recusal. The court will consider each argument in turn.

**I.     Rule 11(c) and Participation in Plea Negotiations**

Federal Rule of Criminal Procedure 11(c)(1) provides in relevant part:

> An attorney for the government and the defendant's attorney, or the defendant proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions.

Though district courts are meant to take an active role in evaluating a plea agreement, the rule categorically prohibits judges from participating in plea negotiations between the defendant's attorney and the government. *United States v. Linder,* 530 F.3d 556, 562 (7th Cir. 2008). This prohibition recognizes that the judge and the accused are not co-equal participants in plea negotiations; a condition that raises a question of fundamental fairness because the defendant "needs no reminder that if he rejects the proposal, stands upon his right to trial and is

-4-

convicted, he faces a significantly longer sentence." *United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998) (citing Fed. R. Crim. P. 11 advisory committee's note (1974 amendment)). When impermissible court participation in plea negotiations occurs, the rule and best practice is to reject the guilty plea, allow the defendant to withdraw it, and advise the defendant that the judge is not bound by the party's plea agreement. *United States v. O'Neill*, 437 F.3d 654, 658 (7th Cir. 2006).

Rule 11(c)(1) does not compel recusal in this case because the court did not violate the rule's prohibition. Notably, the government and the defendant have neither proposed nor reached a plea agreement. (Def.'s Waiver Recusal, pp. 2-3) ("This concern [about preserving a possible plea agreement] is merely hypothetical at this juncture, as the government has not made any plea offer to Salahuddin."). Thus, the court could not impermissibly participate in plea negotiations because no such negotiations have occurred.

The only basis for arguing a Rule 11(c)(1) violation stems from the court's suggestion that a charge of making a false statement in acquiring a firearm represented one possible alternative to continued litigation in the case[1]. Moreover, neither the U.S. Attorney or the Federal Defender appeared as counsel of record

---

[1] The court made this suggestion on the basis of both verbal and written representations made to Salahuddin by AUSA Gordon Giampietro that were memorialized in his August 1, 2005 letter to Salahuddin's counsel in which he opined that Salahuddin would not be subject to the armed career criminal enhancement provision found in 18 U.S.C. § 924(e) that, if applicable, would have triggered a 15 year statutory mandatory sentence. In light of Giampietro's representations, it does not appear that the U.S. Attorney's acceptance of Salahuddin's case for Federal prosecution was predicated upon a determination that he was in fact subject to the armed career criminal enhancement. Indeed, the facts suggest quite the contrary. Therefore, the court thought it prudent to suggest an alternative disposition under an otherwise appropriate statute that would not trigger application of the enhancement, but would provide a potential sentencing range consistent with both the defendant's relevant conduct as well as the sentencing range originally contemplated by the parties.

-5-

in the case, nor were they otherwise familiar with the facts or procedural history as recounted by the court during the 20 minute meeting. Instead of negotiating, the court simply provided counsel with a detailed overview of the procedural history of the case and, with the benefit of that history, invited the United States Attorney and the Federal Defender to consider other potential alternatives with the goal of ultimately achieving a fair, just and reasonable resolution of the case. Indeed, at the very outset of the court's comments, the court specifically foreclosed any discussion between the U.S. Attorney and the Federal Defender in the court's presence. It should also be noted parenthetically that the invitation to the heads of both offices to attend the meeting served dual purposes. First, it insured that a matter of significant concern to the court would thereafter be meaningfully addressed by both the U.S. Attorney and Federal Defender. Second, it obviated any potential discussion of specifics with the court, since neither participant had been provided with any advance notice as to the subject matter the court wished to address nor was there any expectation by the court that either would be knowledgeable about the procedural history of the case, much less the defendant's relevant conduct. The court invited agency heads rather than attorneys directly involved in the case, for good reason. The court had absolutely no desire or interest in conducting what might otherwise be viewed as a classic negotiation session with counsel for the parties.

To be sure, the pursuit of efficiency and economy in adjudicating criminal cases can hardly be considered an inappropriate or unusual goal. Indeed, these

ends explain why dispositions short of trial have generally become the norm and not the exception in our system of justice.

Further, even if one were to conclude for the sake of argument that the court's comments were tantamount to "participation in plea negotiations," which the court believes they are not, the exchange does not implicate the fundamental purposes that underlie Rule 11(c)(1). The danger of coercion which the rule is designed to guard against is simply not borne out by the relevant facts in this case. The purpose of the rule serves to bar the court from participating in plea negotiations so that the defendant will not be coerced into accepting a plea agreement to avoid angering a judge who will later sentence the defendant if he is convicted at trial. *See Kraus*, 137 F.3d at 452. However, no plea agreement has been generated in the instant case. Therefore, Salahuddin could not be coerced by the court's alleged participation into accepting the non-existent plea agreement. Thus, the considerations of Rule 11(c)(1) do not require recusal in this case for the following reasons: 1) no plea negotiations between counsel had occurred, or were otherwise ongoing; 2) the court's comments did not constitute "negotiations," under the rubric of Rule 11(c)(1); and 3) as a consequence, the defendant was never in danger of being coerced into acceptance of any disposition short of trial on the merits.

Additionally, as Salahuddin points out, he may waive any right as part of a future plea agreement, including the right to complain about a Rule 11(c)(1) violation. (Def.'s Waiver Recusal, p. 3). Thus, the government need not fear that any future

plea agreement that may be entered into between the parties will be deemed invalid based on a perceived Rule 11(c)(1) violation.

## II.     Appearance of Partiality

The government filed its original motion for recusal in accordance with 28 U.S.C. § 455(a). The statute provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for recusal under § 455(a) is whether a reasonable, well-informed observer would question the judge's impartiality. *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998) (citing *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996)). Stated another way, the question at issue is whether a reasonable person would perceive a significant risk that the judge will not resolve the case on the merits, but rather, on some other basis. *Id*. The inquiry is an objective one and determines how the situation appears to a well-informed thoughtful observer, not to a hypersensitive or unduly suspicious one. *In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990). Thus, the standard requires a risk of partiality substantially out of the ordinary. *See id*.

Even where an appearance of impropriety exists, the statute does not automatically require a judge to recuse himself or herself. Instead, parties may waive § 455(a) grounds for the appearance of partiality. Under 28 U.S.C. § 455(e), a judge may accept a waiver of any ground for disqualification under § 455(a) "provided it is preceded by a full disclosure on the record of the basis for disqualification." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003).

-8-

Case 2:05-cr-00145-LA     Filed 04/10/09     Page 8 of 16     Document 117

In the instant case, the defendant has filed a waiver of recusal under § 455(e), thereby waiving any ground for disqualification on the basis of an appearance of partiality. However, the government has not waived recusal grounded in § 455(a). Therefore, the court must render an independent determination as to whether recusal is required. *United States ex rel. Britz v. Thieret*, 737 F. Supp. 59, 60 (C.D. Ill. 1990) ("Simply put, the point is that Petitioner has not waived disqualification under § 455(a), and so we must consider whether the disqualification is required.").

Recusal is inappropriate in this case because a reasonable, well-informed observer would not question the court's impartiality. Once again, the government argues that an appearance of partiality arises from both the October 9, 2008 meeting between the court, the U.S. Attorney and the Federal Defender, and from the court's denial of the government's original motion for recusal[2]. Such considerations are insufficient to suggest partiality and overcome the court's "obligation to litigants and [its] colleagues not to remove [itself] needlessly because a change of umpire in mid-contest may require a great deal of work to be redone and facilitate judge-shopping." *In re National Insurance Company*, 839 F.2d 1226, 1229 (7th Cir. 1988). Such is particularly true in this instance given the fact that Salahuddin's case has already been assigned to three different judges.

---

[2] The government particularly objects to the court's brief consideration of the recusal motion and its description of the motion as an "ill-considered, poorly-disguised, preemptive collateral attack." The government alleges that this comment illustrates the partiality of the court and "illustrates the dangers that accompany court involvement in plea negotiations: the perception that the court is displeased because the parties (apparently) have rejected the court's preferred resolution of the case." (Mot. Recon., p. 10).

-9-

First, no reasonable person would question this court's impartiality because the defendant has expressly waived any grounds for recusal. A criminal defendant arguably has the most at stake in any criminal case-the loss of his liberty. Therefore, he is particularly attuned to potential bias from the court and has great motivation to question possible partiality. However, Salahuddin does not believe the October 9, 2008 meeting gives rise to an appearance of partiality: "Salahuddin does not question the court's impartiality..." (Def.'s Waiver, p. 2). Further, Salahuddin has waived recusal on any § 455(a) basis: "..but since the government raised the issue, he asks the Court to accept his waiver of recusal..." *Id.* The defendant, an invested party with a large stake in the outcome of the case, does not question the judge's impartiality. Further, as previously discussed, the court left proper resolution of the case to the complete discretion of the parties and did not inappropriately participate in plea negotiations. Therefore, an objective, informed observer would not question this court's impartiality.

Second, denial of the government's recusal motion cannot itself suggest partiality and compel recusal. Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky v. United States*, 510 U.S. 540, 555 (1994). If the simple fact that a court denied a party's recusal motion gives rise to an appearance of partiality, then filing a recusal motion would be equivalent to recusal-at-will by the parties. Therefore, the court's act of denying the government's motion is not a ground for questioning the court's impartiality.

In addition, the content of the court's earlier decision cannot give rise to an appearance of partiality. Judicial remarks made during the course of trial that are critical or disapproving of the parties or their cases do not ordinarily support a bias or partiality challenge. *Id.* Even a judge's expressions of "impatience, dissatisfaction, annoyance, and even anger" are insufficient to demonstrate bias or prejudice. *Tezak v. United States*, 256 F.3d 702, 718 (7th Cir. 2001) (citing *Liteky*, 510 U.S. at 555-56). The same principle logically applies to a court's written statements in an opinion. Thus, any disagreement or criticism included in the court's decision does not suggest that the court is biased or will decide the case on a basis other than the merits.

Third, the court did not impede the prosecutorial function to give rise to an appearance of partiality. The government asserts that comments made by the court during the October 9, 2008 meeting encroach upon the government's "plenary prosecutorial power," resulting in perceived partiality. The government identifies the offending comments as those criticizing the decision to prosecute Salahuddin federally and those referencing Salahuddin's underlying juvenile convictions suggesting a charge without a fifteen-year mandatory minimum sentence.[3] To support its argument, the government cites Judge Posner's concurrence in *United States v. O'Neill*. 437 F.3d 654, 660 (7th Cir. 2006). In *O'Neill*, Posner expressed

---

[3]The government includes its partiality argument within its larger Rule 11(c)(1) argument regarding impermissible court participation in plea negotiations. However, the court treats the argument as asserting an "appearance of impropriety" and, accordingly, addresses it separately in conjunction with the government's appearance of partiality argument.

his view that the district judge's decision not to accept the original plea agreement between the government and the defense because it gave the defendant too great a sentence reduction for cooperation, and to effectively deny any downward departure under a new agreement, constituted an "unjustified interference with the prosecutorial function." *Id.* Judge Posner explained that the decision whether to give the defendant a discount on his sentence for cooperation with the government, and if so, how great a discount, is "quintessentially an exercise of prosecutorial judgment." *Id.* at 659.

No similar interference with the prosecutorial function occurred in the instant case. This court recognizes that prosecutorial discretion is a prerogative of the executive branch and not that of the judicial branch. However, in the instant case, the court took no action "interfering" with executive prerogatives. Unlike in *O'Neill*, the court did not reject any proposed plea agreement or effectively deny any downward departure for substantial assistance. Indeed, the court took no affirmative step to thwart a prosecutorial decision or impede the government's ability to prosecute the case as it sees fit. Therefore, no "interference" occurred, even if the court disagreed with federal indictment of Salahuddin's case in the manner the government suggests. The meeting between the parties did not give rise to a similar appearance of partiality as that found by the court in *O'Neill* and does not require recusal.

**III.    Party Responses Regarding Recusal**

The court will also address an additional matter outside the government's motion for reconsideration. As earlier noted, the court held a status conference in this case on February 24, 2009. During the conference, the court inquired as to whether the government anticipated making any further filings regarding its motion for reconsideration. The government noted that it would not make any additional filings because courts should not solicit input from parties regarding recusal, pursuant to *In re National Insurance Company*, 839 F.2d 1226 (7th Cir. 1988). (Status Conf. Tr., p. 2:6-23). Prior to the hearing, the court issued a short order inviting the Federal Defender's Office to respond to the government's motion for reconsideration. The order specifically stated that the court "invites legal argument and input from both parties to allow a full discourse on the issue." (Docket #110, p. 2). The government's comments during the hearing did not directly challenge the appropriateness of the court's order. However, the court will address the issue in order that any future challenge on this ground be put to rest.

The court notes that under the current local rules for the Eastern District of Wisconsin, an adverse party in a criminal case is not required to file a response to an opposing party's motion. In contrast, the local rules require civil litigants to file responses to all motions. *See* Civil L.R. 7.1(b), (d). The court invited the Federal Defender's Office to respond to the government's motion because, otherwise, no response was required and the motion would not, in this court's view, be fully briefed.

In addition, the case cited by the government, *In re National Insurance Company*, does not render the court's request improper. 839 F.2d 1226 (7th Cir. 1988). In that case, the Seventh Circuit denied the appellants' writ of mandamus regarding the district court judge's refusal to recuse himself because such recusal was not required. *In re Nat'l Ins. Co.*, 839 F.2d at 1232. The issue of recusal arose because the judge's adult son, an attorney, was hired to work on a complex transaction for the defendant that was unrelated to the subject of the case before the court. *Id.* at 1227. Following his son's retention by the defendant, the judge asked for the "observations of counsel" regarding the potential conflict of interest. *Id.* After receiving input from twenty law firms representing the various parties, the judge ultimately declined to recuse himself. *Id.* at 1227-28. In rendering its opinion, the Seventh Circuit stated that "[j]udges should refrain from asking for the views of counsel on these questions." *Id.* at 1231. However, this phrase does not accurately distill the court's recusal holding to its essence.

*In re National Insurance Company* does not hold that judges must never ask for counsel's views, nor does it state that a judge must always recuse if he does. The Seventh Circuit made the statement in a case where the judge *did* solicit the parties' views regarding recusal, and yet, the court found that recusal of the district judge was *not required. Id.* at 1232. Indeed, the court rejected the view of the Advisory Committee on Codes of Conduct of the Judicial Conference that the judge must recuse himself. *Id.* at 1230-31. ("The Advisory Committee on Codes of Conduct took a different view. It concluded that a judge who solicits advice from counsel

must stand aside if counsel objects, even though judicial service does not present an appearance of impropriety. Despite our respect for the Committee's expertise on this subject, we do not agree."). Clearly, the court did not establish a rule requiring automatic recusal in every case in which the judge requests input or responses from the parties regarding recusal.

In addition, the Seventh Circuit distinguished between a judge's solicitation of the parties' views and solicitation of a waiver of grounds for recusal. The Seventh Circuit noted that the district judge in the case before the panel "did not call on counsel to 'indicate their approval' of his remaining in the case or even ask for their 'views as to the desirability of his remaining in the case,' he asked only for their views about what he should consider" in finding recusal unnecessary. *Id*. at 1231. Similarly, in the instant case, the court's request for the Federal Defender to respond to the government's motion for reconsideration is neither a request that Salahuddin "indicate his approval" of the court's continued presiding over his case, nor is it a request for Salahuddin's "views as to the desirability" of the court's continued handling of the case. Instead, the court's request merely "invites legal argument and input from both parties to allow a full discourse on" the government's motion. (Docket #110, p. 2). Though Salahuddin waived any grounds for recusal, the court never sought such a waiver. Thus, the court's order inviting a response to the motion for reconsideration does not require this court's recusal.

## IV. Challenge to the Merits

Finally, recusal is not the appropriate vehicle for challenging the merits of the court's rulings on suppression of evidence. "Adverse rulings should be appealed; they do not form the basis for a recusal motion." *In re Huntingon Commons Assocs.*, 21 F.3d 157, 158 (7th Cir. 1994). The government's disagreement with the court's suppression of Salahuddin's statements is more appropriately a subject for the Seventh Circuit on appeal, rather than a matter to be decided on a motion to reconsider recusal.

Accordingly,

**IT IS ORDERED** that the government's motion for reconsideration (Docket #109) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 10th day of April, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge